Dovi, Respondent, vs. House, Appellant.

*February 14—March 14, 1944.*

60

For the appellant there was a brief by *Rubin, Zabel &
Ruppa,* attorneys, and *Wm. B. Rubin* and *N. Ruppa* of counsel,
all of Milwaukee, and oral argument by *Mr. Ruppa.*

For the respondent there was a brief by *Joseph M. Picker,*
attorney, and *Eugene L. McIntyre* of counsel, both of Milwau-
kee, and oral argument by *Mr. McIntyre.*

ROSENBERRY, C. J.    From the findings of fact made by the
court the following appears :  That the petitioner is the father
of the children, in whose behalf the petition herein was made;
that Genevieve M. Dovi, the mother of the children, resided
in Milwaukee county until October 23, 1943.    Prior to that
time the mother commenced an action for divorce.    The an-
swer of the father put in issue the allegations of the mother's
complaint and by way of counterclaim he asked for a divorce
from the plaintiff.    The divorce action was tried on the 7th day
of October, 1943.    The court dismissed both the complaint and
the counterclaim on the merits and awarded the custody of
both children to the father.    (The validity of this judgment
was contested by the mother and determined on appeal to this
court in the case of *Dovi v. Dovi, ante,* p. 50, 13 N. W. (2d)
585.)    The children were turned over to the father by the
mother and remained in his undisturbed and uninterrupted
custody until October 23, 1943, on the morning of which day
the father and his mother took the two children to a beauty
parlor to have the children's hair dressed.    While the father
was momentarily absent, the mother of the children and the
respondent, over the protest of the father's mother and the
screaming children, forcibly took them to an automobile which

the respondent had parked on a near-by side street. The mother of the children and the respondent then entered the car and drove away with the children, the respondent being the driver. At the time of the taking of the children out of the beauty shop, respondent knew that the custody of the children had been awarded to their father in the divorce action.

On the evening of October 27, 1943, a deputy sheriff of Milwaukee county sought to serve the mother with a copy of the judgment which had been filed and called at the respondent's place of business for that purpose. Upon inquiry as to the whereabouts of the mother of the children, the deputy sheriff was told by the respondent that she (respondent) had seen the mother and the two children off on the "400" train and had sent her out of town and had given the mother $55; that she did not know their destination, and the respondent further added that she would not tell if she did know.

About 4 o'clock a. m. on the 28th day of October, 1943, the respondent brought the two children to the home of one of her sisters, Mrs. Ann Kube, in an automobile, and asked permission to leave the children with Mr. and Mrs. Kube until about 8 o'clock a. m. of the same day. Permission was refused and the defendant then drove away with the children.

After two adjournments the respondent appeared in court on December 23, 1943, without the children and testified that the only effort she had made to locate them was to have her mother write a letter to some of her mother's friends living in the state of Pennsylvania, and produced a letter in reply to the mother's inquiry to the effect that neither the children nor the mother were at the place to which the letter was addressed, and that the addressee did not know the whereabouts of the mother or the children.

Upon this state of facts the court concluded that the respondent had not exhausted all of the means within her power to have said children in court and that it was and still is within the power of respondent to produce said children in court.

The court thereupon made an order requiring the defendant to show cause on the 17th day of December, 1943, at 2 o'clock p. m.—

"why she should not be punished as and for contempt of court, at which time and place she was again required and ordered to produce the children in court, and exhaust every possible means to do so."

On account of respondent's illness the hearing was adjourned to December 21, 1943, at which time the respondent filed an amended return and further alleged:

"That she has not Katheline Dovi and Diane Dovi, or either of them, in her custody or under her power. That she never had in her custody or under her power at any time said Katheline Dovi and Diane Dovi or either of them."

The respondent then testified that she had caused an advertisement to be inserted in a Milwaukee newspaper on December 12th, 13th, and 14th, and that on or about December 16th, her attorney had received what purported to be a letter written to said attorney by the mother of the children which said letter did not indicate where the letter was written nor did it disclose the whereabouts of the mother and the children except that it was postmarked Wilmette, Illinois, December 13, 1943, 7 p. m. The mother also wrote a letter to petitioner postmarked at the same place.

She further testified that the only other effort she had made to locate the children or the mother since December 3, 1943, was to insert the ad above referred to.

The hearing was concluded on December 23, 1943, and the matter then adjourned to January 4, 1944, at which time the court was to render its decision. The respondent was ordered to appear at that time and admonished to make utmost exertions to discover the whereabouts of the children. The court found that—

"the respondent's testimony throughout has not been convincing. Her attitude while testifying was one of insolence and defiance. Her answers were evasive, prevaricating and untruthful."

The court then made the following conclusions of law:

"1. That on the 23d day of October, 1943, the children were in the legal custody of the petitioner herein, as respondent well knew.

"2. That in the illegal taking of said children, their mother and the respondent herein acted in concert toward the accomplishment of a common purpose, in defiance of and to defeat the judgment in the divorce action awarding the children to their father.

"3. That on the morning of the 28th day of October, 1943, the respondent had the actual custody, possession and control of said children, who were then under her power.

"4. That respondent, in order to deprive the petitioner herein of the custody of his said children, and in anticipation of legal proceedings on the part of the father to regain custody of his children, illegally caused said children to be transported beyond the jurisdiction of this court.

"5. That since the service of the writ of *habeas corpus* herein on respondent she has made false, impertinent and evasive returns to said writ.

"6. That she has not made any *bona fide* effort to produce said children in court in response to said writ and orders of this court.

"7. That her refusal to produce said children constitutes a deliberate, wilful, contumacious and continuing refusal to comply with the writ in defiance and disregard of the command thereof, and the orders made by this court during these proceedings, showing a clear intention to defeat the jurisdiction of this court in the premises.

"8. That it is still within the power of the respondent herein to have and produce said children in court, and that her refusal to do so constitutes and is a deliberate, wilful, contumacious and presently continuing contempt of this court, committed in the immediate view and presence of this court.

"9. That the actual production of the children before the court is a prerequisite to any further proceedings in this *habeas*

*corpus* matter, and that said contempt was calculated to and actually did defeat, impede and prejudice the rights ,and remedies of the petitioner herein.

"10. That respondent's refusal to produce said children was a direct disobedience and contempt of the authority of this court.

"The contempt now found is based on respondent's refusal to produce said children in court, thereby blocking, preventing and thwarting any further action of the court, or proceedings in this matter, until the children are produced.

"Upon the foregoing conclusions of law, and the court again determining that it is yet in the power of the respondent, Constance House, to produce said children before the court, who are named in the petition for a writ of *habeas corpus,* as she was commanded and required to do, in and by a writ of *habeas corpus* herein, and the intermediate directions and orders of the court, the respondent will now be committed to and imprisoned in the county jail of Milwaukee county only until she shall produce said children before this court, and further proceedings in this *habeas corpus* matter are held open until said children are produced in court and until further order."

Upon the appeal the respondent contends, (1) that there is no credible evidence that at the time of the *habeas corpus* proceeding, the appellant had the children under her control or within her power to produce them in court; (2) that the appellant cannot be committed to the county jail for contempt of court under sec. 295.15, Stats., there to be imprisoned until she produces the children before the court in an action not calling for an indemnity; (3) that the appellant in assisting her sister to remove the children on October 27, 1943, was not guilty of an act in anticipation of the legal proceedings, to wit, *habeas corpus* proceeding instituted November 1, 1943; and (4) that the trial court had no jurisdiction to award the custody of the children to petitioner.

Taking up the contentions of the respondent in their order, it is considered that there is ample evidence from which the

court might conclude, as it did, that the respondent had actual custody, possession, and control of the children on October 28, 1943, and that in removing the children under the circumstances already stated, she acted in defiance of the judgment of the circuit court awarding the custody of the children to the petitioner; that the circumstances are such that it may be readily inferred that she still has it within her power to produce the children as ordered although they may not be in her personal custody. She is not a mere aider. She is a principal in what was done to take the children from the custody of the father and remove them from the jurisdiction of the court.

As to the second contention, it is not necessary under sec. 295.15, Stats., that the contemnor be adjudged to pay a fine in order to warrant her imprisonment. The misconduct complained of in this case consists of an omission to perform an act or duty which the trial court found to be within the power of the defendant to perform. The respondent may under the statute be committed until she performs such act or duty irrespective of whether she was adjudged to pay a fine or not. The commitment issued in this case is strictly in accordance with the language of the statute.

Whether the sister anticipated *habeas corpus* proceedings is immaterial. She knew that the custody of the children had been awarded to the father by the judgment of divorce.

As to the fourth contention that is answered in the decision of the case of *Dovi v. Dovi, ante,* p. 50, 13 N. W. (2d) 585.

It was certainly within the province of the trial court to find upon the showing made by the respondent that she had not made a *bona fide* effort to comply with the order of the court to produce the children. It is also apparent from the record that the respondent had no intention to do more than what would amount to an excuse for her failure to comply with the order of the court. It is highly improbable that the respondent does not know the whereabouts of her sister and children unless she remains wilfully ignorant in regard to their

whereabouts. There is, as the trial court found, reason to believe that if respondent had made a genuine, *bona fide* effort to produce the children, they would be produced although they may now be beyond the jurisdiction of the court in another state.

Certainly it was within the province of the trial court to enforce its order by the only means within its power, that is, by committing the respondent. Her sister Genevieve, mother of the children, in a letter written to her husband, the petitioner, among other things said:

"Just a line to let you know the children are fine. I read a piece in the paper about you blaming Connie for our disappearance. . . . So if you like, you can give this letter to your lawyer, which you probably will anyway. And ease his mind that my family has not heard from me and do not know where I am. I spared writing them because I wanted no one to be blamed for what I did."

The last sentence might well read: "I spared writing them because I did not want them to know my whereabouts." From this circumstance the trial court might draw the inference that the failure of the mother to advise the respondent of her whereabouts was the result of an understanding between them.

The respondent is in a more serious situation than she realizes, judging by her conduct. If the acts committed by the mother and the respondent in removing the children from the lawful custody of the petitioner amount to kidnaping (sec. 340.54, Stats.), the respondent is as guilty as the mother. She took full charge of the children in an attempt to conceal them in the home of her sister. She took the mother and the children to the train and furnished the money which enabled the mother to take the children out of the state. It is considered that the evidence warranted the conclusions and inferences drawn from it by the trial court. With time to think the matter over respondent may conclude that she made a mistake in taking the law into her own hands and making herself a principal actor

in removing the children from.the jurisdiction of the court in defiance of the judgment of the court. It is within her power to make a *bona fide* effort to secure the return of the children to the custody of the father. It will be within the discretion of the trial court to determine whether such an effort is made if the children are not returned.

*By the Court.*—The judgment, commitment, and orders appealed from are affirmed, the stay heretofore granted in this court is vacated, and the clerk is directed to remit the record forthwith to the trial court for further proceedings according to law.